1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**DISTRICT OF NEVADA**

10

* * *

11

ROSA I. MENDEZ,

12

Plaintiff,

Case No. 2:19-cv-00368-BNW

13

v.

**ORDER**

14

15

ANDREW SAUL,* Acting Commissioner of
Social Security,

16

Defendant.

17

18          This case involves review of an administrative action by the Commissioner of Social

19     Security denying Plaintiff Rosa I. Mendez's application for disability insurance benefits and

20     supplemental security income under Titles II and XVI of the Social Security Act, respectively.[1]

21     The court reviewed Plaintiff's motion to remand (ECF No. 15), filed July 25, 2019, and the

22
                    * Andrew Saul has been substituted for his predecessor in office, Nancy A. Berryhill,
23     pursuant to Federal Rule of Civil Procedure 25(d).
                    [1] Title II of the Social Security Act provides benefits to disabled individuals who are
24     insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a
       certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by
25     general tax revenues designed to help disabled individuals who have low or no income. Although
       each program is governed by a separate set of regulations, the regulations governing disability
26     determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–
       1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d
27     (governing disability determinations under Title XVI).
28

1    Commissioner's countermotion to affirm and cross-motion for summary judgment (ECF Nos. 16,

2    17), filed August 26, 2019. Plaintiff did not file a reply.

3        The parties consented to the case being heard by a magistrate judge in accordance with 28

4    U.S.C. § 636(c) on October 18, 2019. ECF No. 18. This matter was then assigned to the

5    undersigned magistrate judge for an order under 28 U.S.C. § 636(c). *Id*.

6    **I.    BACKGROUND**

7        **1.    Procedural History**

8        On August 16, 2013, Plaintiff applied for disability insurance benefits and supplemental

9    security income under Titles II and XVI of the Act, respectively, alleging an onset date of May 1,

10   2011. AR[2] 437–443; 444–453. Her claim was denied initially and on reconsideration. AR 267–

11   271; 281–285. A hearing was held before an Administrative Law Judge ("ALJ") on June 24,

12   2015. AR 141–161. On August 14, 2015, the ALJ issued a decision finding that Plaintiff was not

13   disabled. AR 241–255. She appealed to the Appeals Council.

14       The Appeals Council granted Plaintiff's request for review on March 24, 2017. AR 261–

15   266. A new hearing was held before an ALJ on August 4, 2017. AR 162–202. On July 20, 2018,

16   the ALJ issued a decision finding that Plaintiff was not disabled. AR 16–31. The ALJ's decision

17   became the Commissioner's final decision when the Appeals Council denied review on January

18   4, 2019. AR 1-6. Plaintiff, on March 1, 2019, commenced this action for judicial review under 42

19   U.S.C. §§ 405(g). (*See* IFP App. (ECF No. 1)).

20   **II.    DISCUSSION**

21       **1.    Standard of Review**

22       Administrative decisions in social security disability benefits cases are reviewed under 42

23   U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g)

24   provides: "Any individual, after any final decision of the Commissioner of Social Security made

25   after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a

26   review of such decision by a civil action . . . brought in the district court of the United States for

27   _____

28       [2] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 11)).

the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where

1    appropriate, should include a statement of subordinate factual foundations on which the ultimate

2    factual conclusions are based." *Id.*

3            **2.**       **Disability Evaluation Process**

4         The individual seeking disability benefits has the initial burden of proving disability.

5    *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must

6    demonstrate the "inability to engage in any substantial gainful activity by reason of any medically

7    determinable physical or mental impairment which can be expected . . . to last for a continuous

8    period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). More specifically, the individual

9    must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R.

10    § 404.1514. If the individual establishes an inability to perform her prior work, then the burden

11    shifts to the Commissioner to show that the individual can perform other substantial gainful work

12    that exists in the national economy. *Reddick*, 157 F.3d at 721.

13         The ALJ follows a five-step sequential evaluation process in determining whether an

14    individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If

15    at any step the ALJ determines that he can make a finding of disability or non-disability, a

16    determination will be made, and no further evaluation is required. *See* 20 C.F.R.

17    § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to

18    determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R.

19    § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves

20    doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)–(b). If

21    the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not

22    engaged in SGA, then the analysis proceeds to step two.

23         Step two addresses whether the individual has a medically determinable impairment that

24    is severe or a combination of impairments that significantly limits her from performing basic

25    work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe

26    when medical and other evidence establishes only a slight abnormality or a combination of slight

27    abnormalities that would have no more than a minimal effect on the individual's ability to work.

28

*Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[3] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

---

[3] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are "entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Bray*, 554 F.3d at 1224 (citations omitted) (finding that the ALJ erred in disregarding SSR 82-41).

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. AR 25–31.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 1, 2011. AR 25.

At step two, the ALJ found that Plaintiff had the medically determinable "severe" impairment of degenerative disc disease of the lumbar spine, status post fusion. *Id*. The ALJ found that her hypothyroidism and left thyroid nodules to be "non-severe." *Id*. Additionally, the ALJ found that Plaintiff's mental health impairments (i.e., anxiety, depression) were not medically determinable impairments. *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 26.

Before moving to step four, the ALJ also found that Plaintiff had the residual functional capacity to perform sedentary work: She can sit for about 6 hours in an 8-hour day; she can stand or walk for about 2 hours; she can lift or carry up to 10 pounds occasionally; she can occasionally balance, stoop, kneel, crouch, or crawl; she can occasionally climb ramps or stairs; but she can never climb ropes, ladders, or scaffolds. *Id*.

At step four, the ALJ found that Plaintiff can perform past relevant work as a lock assembler. AR 30. Accordingly, the ALJ ended the five-step sequential evaluation process and concluded that Plaintiff was not under a disability at any time from May 1, 2011 through July 20, 2018, the date of the ALJ's decision. AR 31.

### 3.    Analysis

#### I.    Whether the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's pain and symptom testimony

##### A. The parties' arguments

Plaintiff moves to remand this matter because she argues that the ALJ failed to "articulate clear and convincing reasons for discounting" her pain and symptom testimony. ECF No. 15 at 7. Plaintiff argues that the ALJ erred regarding each of the four reasons he cited to discount Plaintiff's subjective complaints. Specifically, Plaintiff argues that the ALJ (1) failed to inquire as to Plaintiff's reasons for declining physical therapy or injections; (2) failed to "inquire as to [the ALJ's] perception" that Plaintiff engaged in drug-seeking behavior; (3) failed to "adequately explain" how Plaintiff's activities of daily living "translate into the ability to perform full-time work on a sustained basis[;]" and (4) because the ALJ erred with regard to the prior three reasons, he could not rely solely on his final reason—that objective evidence does not support Plaintiff's subjective complaints. *Id*. at 8–9.

The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's pain and symptom testimony was not "fully reliable." ECF No. 16 at 12.

##### B. The ALJ's decision

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not consistent with the medical evidence and other evidence in the record

1   and, therefore, not entirely credible. AR 28. The ALJ specifically found that (1) Plaintiff

2   "repeatedly declined physical therapy or injection treatment to manage her symptoms[,]" (2)

3   Plaintiff "ha[d] exhibited medication- or drug-seeking behavior[,]" (3) Plaintiff's activities of

4   daily living "[were] greater than what one would expect of a disabled individual[,]" and (4)

5   objective medical evidence did not support Plaintiff's pain and symptom testimony. AR 28-29.

### C. Whether the ALJ provided clear and convincing reasons for discounting Plaintiff's pain and symptom testimony

8       An ALJ engages in a two-step analysis to determine whether a plaintiff's testimony

9   regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there

10  is objective medical evidence of an underlying impairment which could reasonably be expected to

11  produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir.

12  2012) (internal quotation marks omitted). "The claimant is not required to show that her

13  impairment 'could reasonably be expected to cause the severity of the symptom she has alleged;

14  she need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*

15  *v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citations omitted).

16      Second, "[i]f the [plaintiff] meets the first test and there is no evidence of malingering, the

17  ALJ can only reject the [plaintiff's] testimony about the severity of the symptoms if [the ALJ]

18  gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d

19  1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are

20  insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

21  undermines the [plaintiff's] complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

22  1995)); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with

23  findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

24  discredit [the plaintiff's] testimony.")). The Ninth Circuit has recognized the clear and convincing

25  evidence standard to be "the most demanding required in Social Security cases" and "not an easy

26  requirement to meet." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

27  *Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)); *Trevizo v. Berryhill,* 871 F.3d

28

1    664, 678 (9th Cir. 2017). An ALJ's failure to provide "specific, clear, and convincing reasons"

2    for rejecting a plaintiff's pain and symptom testimony constitutes legal error that is not harmless

3    because it precludes the Court from conducting a meaningful review of the ALJ's reasoning and

4    ensuring that the plaintiff's testimony is not rejected arbitrarily. *Brown-Hunter v. Colvin*, 806

5    F.3d 487, 489 (9th Cir. 2015).

6         In making an adverse credibility determination, the ALJ may consider, among other, (1)

7    the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or

8    between her testimony and her conduct; (3) the claimant's daily living activities; (4) the

9    claimant's work record; and (5) testimony from physicians or third parties concerning the nature,

10   severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958–59.

11        As discussed below, the Court holds that the ALJ failed to provide clear and convincing

12   reasons, supported by substantial evidence, to discount Plaintiff's subjective symptom testimony

13   as each of his proffered reasons was flawed. *See Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th

14   Cir. 2007). Accordingly, he committed a non-harmless legal error. The Court will discuss each

15   cited reason in turn.

16                    **1.   Plaintiff's declined physical therapy and injection treatment**

17        In his decision, the ALJ wrote, "[Plaintiff] repeatedly declined physical therapy or

18   injection treatment to manage her symptoms (*See, e.g.,* Exhibits 15F/22-24, 26-28, and 30-32)."

19   AR 29. As the Commissioner correctly argues, the ALJ is not required to believe every allegation

20   of a plaintiff's disability. *Orn v. Astrue,* 495 F.3d 625, 635 (9th Cir. 2007). In fact, an ALJ may

21   consider an unexplained, or inadequately explained, failure to seek treatment or to follow a

22   prescribed course of treatment when evaluating a claimant's subjective symptoms. *Id.* at 638; *see*

23   *also Smolen*, 80 F.3d at 1284 (holding that an ALJ may discredit a plaintiff's symptom

24   complaints if the plaintiff fails to show good reason for failing to follow treatment

25   recommendations). But the ALJ's decision "must contain specific reasons for the weight given to

26   the individual's symptoms, be consistent with and supported by the evidence, and be clearly

27   articulated so the individual and any subsequent reviewer can assess how the adjudicator

28   evaluated the individual's symptoms." SSR 16-3p.

Here, even though the ALJ's reason for discounting Plaintiff's pain and symptom testimony is general (i.e., she has "repeatedly declined physical therapy or injection treatment"), the ALJ did, in fact, summarize Plaintiff's treatment. AR 27–29. In his summary, the ALJ noted that Plaintiff underwent a lumbar spinal fusion surgery in 2012, completed pain management treatment with Nevada Comprehensive Pain Center that included receiving bilateral lumbar facet block injections, and received chiropractic therapy and one physical therapy session. AR 27–28. He further noted that she underwent several imaging studies, including a lumbar spine CT scan in 2015 and 2017. AR 27-28. The ALJ's summary, however, was incomplete. For example, the ALJ stated that Plaintiff "repeatedly declined physical therapy or injection treatment to manage her symptoms" and cited to three treatment notes from Nevada Comprehensive Pain Center dated September 19, 2016, October 21, 2016, and November 11, 2016. AR 29. But he failed to acknowledge subsequent treatment notes from Nevada Comprehensive Pain Center dated April 27, 2017 in which Colin Rock, M.D. and Ethel Smith, FNP described Plaintiff's physical therapy treatment as chiropractic therapy and a home exercise program. AR 760. Additionally, the ALJ cited to, but did not address medical records that noted that Plaintiff also underwent a lumbar epidural steroid injection in 2017. AR 906 (Las Vegas Spine & Pain Center treatment notes dated August 7, 2017 reported that Plaintiff's "[p]revious procedures to diagnose or treat the pain include facet injections and lumbar epidural steroid injection 5 months ago with no benefit."). These omissions from the ALJ's decision suggest that the ALJ did not consider—as he should have—all of the relevant evidence in the record, but, instead, impermissibly "cherry picked" from mixed evidence to support a denial of benefits. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

The ALJ's summary also was conflicting. For instance, the ALJ stated that Plaintiff "repeatedly declined physical therapy or injection treatment to manage her symptoms[,]" but also that she attended "chiropractic therapy and one physical therapy session[.]" AR 28–29. To support the claim that Plaintiff completed only one physical therapy session, the ALJ cited to treatment notes from Las Vegas Spine & Pain Center dated August 7, 2017. AR 28. According to

1    these treatment notes, "Previous physical therapy has included stretching exercises, strengthening

2    exercises, home exercise program, TENS unit, massage, heat, ice and traction which the patient

3    participated in from 07/2017, patient reports she completed one session with no benefit." AR 906.

4    It, therefore, appears that Plaintiff engaged in multiple forms of physical therapy, but only one

5    session of traction, a particular type of physical therapy. Additionally, there are multiple instances

6    in the record in which medical providers indicated that physical therapy was not "necessary at this

7    time." *See, e.g.,* AR 649 (Kunal Parikh, M.D. – August 5, 2015), AR 663 (Kunal Parikh, M.D.

8    and Josh Ostler, PA-C – October 30, 2015). Further, as noted above, the ALJ also stated that

9    Plaintiff "repeatedly declined . . . injection treatment." AR 29. This is despite the ALJ

10   acknowledging that Plaintiff underwent bilateral lumbar facet block injections in 2015 in which

11   only the left facet block injection provided "significant relief[.]"[4] AR 28.

12          But even assuming the ALJ correctly found that Plaintiff failed to obtain recommended

13   treatment, before he could draw a negative inference from this finding, he had an obligation to

14   explore Plaintiff's reasons for declining physical therapy and injection treatment. *See Hunt v.*

15   *Colvin*, 642 F. App'x 755, 757 (9th Cir. 2016) (holding that the ALJ did inquire into the

16   plaintiff's lack of treatment, but the "ALJ's sole reason for discounting Hunt's explanations for

17   the lack of medical treatment—that Hunt could afford to smoke half a pack of cigarettes per

18   day—is not persuasive" and that the ALJ erred in not addressing the plaintiff's other cited reason

19   for not treating); *Henry v. Commissioner of Social Sec.*, 802 F.3d 1264, 1269 (11th Cir. 2015)

20   ("The ALJ had an obligation to 'scrupulously and conscientiously probe' into the reasons

21   underlying [the plaintiff's] course of treatment, yet there is nothing in the record indicating the

22   ALJ inquired into or considered [the plaintiff's] financial ability to seek an alternate treatment

23   _____

24          [4] The record includes conflicting information regarding how Plaintiff perceived the
     bilateral lumbar facet block injections' efficacy. *See, e.g.,* AR 799 (On March 25, 2016, Kunal
25   Parikh, M.D. reported that Plaintiff would "like to hold off on additional injections" as they "did
     not provide much relief for a long period of time."); AR 779 (On November 11, 2016, Colin
26   Rock, M.D. noted that "[d]espite earlier reports of efficacy, [Plaintiff] denies that the facet blocks
     helped at all."); AR 760 (On April 27, 2017, Colin Rock, M.D. and Ethel Smith, FNP stated that
27   Plaintiff experienced 20–30 percent relief from the bilateral lumbar facet block injections.). The
     ALJ does not appear to address this conflicting evidence.
28

1   plan. Instead, the ALJ focused on the absence of aggressive treatment as a proxy for establishing

2   disability."); *Roddy v. Astrue,* 705 F.3d 631, 638 (7th Cir. 2013) ("But at the same time, an ALJ

3   'must not draw any inferences about an individual's symptoms and their functional effects from a

4   failure to seek or pursue regular medical treatment without first considering any explanations that

5   the individual may provide.'") (internal citations omitted).

6       An ALJ's duty to inquire into a plaintiff's lack of treatment is a necessary step because, as

7   the Ninth Circuit has held, "[d]isability benefits may not be denied because of the [plaintiff's]

8   failure to obtain treatment [s]he cannot obtain for lack of funds." *Trevizo,* 871 F.3d at 681

9   (quoting *Gamble v. Chater,* 68 F.3d 319, 321 (9th Cir. 1995)) (noting that it is reasonable for a

10  plaintiff with health insurance to be able to afford doctors' visits, but not medication).

11      Here, the ALJ did not provide clear and convincing reasons for discrediting her symptom

12  testimony based on her declining treatment. This is so for two reasons.

13      First, the ALJ twice acknowledged that Plaintiff cited an inability to attend physical

14  therapy because of transportation issues.[5] AR 27–28. But the ALJ did not inquire into whether

15  Plaintiff's resources prohibited her from accessing treatment or why Plaintiff's claim that she

16  could not attend physical therapy because of transportation difficulties undermined her pain and

17  symptom testimony. Additionally, the ALJ failed to acknowledge and address additional medical

18  records that further indicated that Plaintiff was unable to attend physical therapy due to

19  transportation issues. For example, treatment notes from Nevada Comprehensive Pain Center

20  dated January 19, 2017 and February 20, 2017 reported that Plaintiff had been "referred to

21  therapy but has been unable to attend due to transportation issues[,]" and the facility "w[ould]

22  resend after she moves in March." AR 773, 769. The March 16, 2017 treatment notes from the

23  same facility indicated that Plaintiff had started therapy. AR 765 ("The patient is attending

24  chiropractic therapy and doing a [home exercise program].").

25

26

27      [5] The ALJ cited to a report from Cesar Estela, M.D. in 2014 and Nevada Comprehensive
    Pain Center in 2016, respectively, noting that Plaintiff could not attend physical therapy due to
28  transportation issues. AR 27–28.

1    Second, the ALJ failed to inquire into other reasons why Plaintiff declined physical

2    therapy or injection treatment. The record suggests that insufficient funds may be a reason for

3    Plaintiff's decision to "repeated[ly]" decline physical therapy or injection treatment. *See, e.g.,* AR

4    176 (Plaintiff testified that she last visited Nevada Comprehensive Pain Center in July 2017

5    because the facility would not accept her new government-issued health insurance, but the ALJ

6    did not develop this issue further.).

7        The Commissioner argues that the ALJ was correct in discounting Plaintiff's pain and

8    symptom testimony because there is evidence that Plaintiff declined treatment. ECF No. 16 at 10.

9    Yet the Commissioner relies on some reasons (e.g., Plaintiff attended Edward Suarez Physical

10   Therapy only once because she could not tolerate the hot cables used[6]) that were not cited by the

11   ALJ in his decision. The Court, however, can only consider a ground the ALJ invoked. *See Orn*,

12   495 F.3d at 630; *Stout*, 454 F.3d at 1054.

13       Finally, before the ALJ could draw a negative inference from Plaintiff's decision to

14   decline physical therapy and injection treatment, he had an obligation to explore whether she

15   would be able to return to work if she had, in fact, followed her prescribed treatment. *Byrnes v.*

16   *Shalala*, 60 F.3d 639, 641 (9th Cir. 1995) (citations omitted). The ALJ is silent on this issue.

17       Accordingly, the Court holds that the ALJ erred in discrediting Plaintiff's symptoms based

18   on her medical history without addressing her complete medical history, without exploring the

19   reasons behind her alleged lack of physical therapy and injection treatment, and without

20   indicating whether compliance with physical therapy or injection treatment would have allowed

21   Plaintiff to return to work. *See Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015) (holding

22   that an ALJ's failure to find that a plaintiff lacked good cause for failing to comply with

23   prescribed treatment or that complying would have allowed the plaintiff to return to work did not

24

25

26       [6] When the ALJ asked Plaintiff when she *last* attended physical therapy, she replied that it
     "was over two months ago." AR 177. The ALJ then asked whether the name of the facility was
27   Edward Suarez Physical Therapy, but Plaintiff could not remember. *Id.* She did, however,
     remember that she went to the facility only once because she could not tolerate the hot cables
28   used. *Id.* The ALJ then asked about the last time Plaintiff had visited Henderson Hospital. *Id.*

1   constitute specific, clear, and convincing reasons for discrediting the plaintiff's pain and symptom

2   testimony).

3                    **2.  Plaintiff exhibited medication- or drug-seeking behavior**

4           Next, the ALJ found that Plaintiff "exhibited medication- or drug-seeking behavior." AR

5   29. But the ALJ relied on evidence from the record that the Court finds neither clear nor

6   convincing. For example, the ALJ cited to the non-disability finding completed by State agency

7   reviewing doctor Mary Lanette Rees, M.D. in which Dr. Rees concluded that Plaintiff "did not

8   return to the doctor [Wesley Johnson, M.D.] after she was told no more opiates" and Plaintiff was

9   doctor shopping for medication. AR 233–234. Dr. Rees did not cite to any specific documents to

10  support her claim. And when reviewing Dr. Johnson's treatment notes, it is unclear whether

11  Plaintiff was, in fact, medication- or drug- shopping. This is because Dr. Johnson's treatment

12  notes have their own internal inconsistencies.

13          On June 5, 2012, Plaintiff had an initial consultation with Dr. Johnson. AR 555. She

14  complained of almost two-year-old pain to her low back and, to "some degree[,]" to her buttocks.

15  *Id*. At this visit, Dr. Johnson recommended that Plaintiff undergo a lumbar spine X-ray, which

16  Plaintiff did. AR 556. He also recommended pain medication, including hydrocodone and "Norco

17  7.5[.]"[7] *Id*. Additionally, Dr. Johnson noted that Plaintiff had not "given [anti-inflammatories] a

18  long term trial of use[,]" not worn a back brace, and not had "any specific treatment other than

19  [the] occasional anti-inflammatory." AR 555. Yet two days later, Dr. Johnson recommended that

20  Plaintiff undergo lumbar spinal fusion surgery, noting that she "ha[d] failed all conservative

21  measures beyond any reproach" and "ha[d] undergone extensive pain management, narcotics,

22  antiinflammatories, bracing, physical therapy and chiropractic and it simply has not gone away."

23  AR 554. Dr. Johnson performed the surgery a few weeks later, on July 2 or 3.[8] AR 557–558.

24

25

26          [7] The ALJ wrote, "Of note, [Plaintiff] developed tolerance to Norco in December 2014
    (Exhibit 10F/30)." AR 30. But the ALJ did not explain how a tolerance to a medication suggests

27  medication- or drug-shopping behavior.

28          [8] The operative report for Plaintiff's surgery is printed with two dates: July 2, 2012 and
    July 3, 2012. AR 558. But the section titled "Date of Surgery" is left blank. *Id*.

1          The ALJ also stated that on August 27, 2013, Dr. Johnson "reported that he would not

2   prescribe any further medication until [Plaintiff] obtained x-rays of her lumbar spine (Exhibit

3   1F/1)[,]" and, because Plaintiff did not, the doctor's treatment ended. AR 29. But the ALJ appears

4   to misinterpret the record. First, Plaintiff did, in fact, obtain a lumbar spine X-ray about two

5   months after Dr. Johnson's request to do so. *See, e.g.,* AR 590 (Nevada Comprehensive Pain

6   Center records listing the impressions from a lumbar spine X-ray that was completed on October

7   24, 2013). As such, the ALJ relied on an objectively false statement to support his finding.

8   Second, page one of Exhibit 1F is Dr. Johnson's treatment note dated August 27, 2013 in which

9   he wrote that he "begrudgingly gave [Plaintiff] some medication" and would require "some x-

10  rays of her back" before prescribing further medication. AR 547. The same note reads, "If

11  [Plaintiff] is going to continue to use narcotics on a regular basis for her residual pain, then

12  perhaps it will have to happen through her Primary Care or Pain Management specialist if she so

13  desires." *Id*. This suggests that Dr. Johnson found that Plaintiff may still benefit from pain

14  medication, and he may want a different medical provider to prescribe them.

15         Further, the ALJ does not reconcile his claim that Plaintiff exhibited medication- or drug-

16  seeking behavior with other medical provider treatment notes from 2015–2017 that state that

17  Plaintiff did *not* exhibit "signs of addiction, abuse, diversion, or suicidal ideation." *See, e.g.,* AR

18  650, 654, 667, 762, 782. The ALJ also did not reconcile this finding with separate treatment notes

19  from mid-2018 in which Plaintiff was reported to state that she would like to increase her

20  medication dosage because "current pain medications are not providing adequate pain control[.]"

21  AR 62 (Patricia Ganja, PA-C – May 25, 2018).

22         Accordingly, the ALJ's reliance on Dr. Rees and Dr. Johnson to find that Plaintiff

23  exhibited medication- or drug-seeking behavior without resolving the conflicts with findings by

24  other medical providers is not sufficient to establish "specific, clear, and convincing" reasons for

25  discounting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. On these facts, the Court cannot

26  conclude that substantial evidence of medication- or drug-seeking behavior exists to support the

27  ALJ finding Plaintiff not credible based on such behavior.

28

### 3. Plaintiff's activities of daily living

The ALJ also found Plaintiff's pain and symptom testimony not fully credible because of the activities of daily living that she can perform. Specifically, the ALJ found that Plaintiff's activities of daily living, as of August 5, 2013, included "ke[eping] house, cook[ing], clean[ing], and d[oing] laundry for four people (Exhibit 1F/2)" and being a "homemaker[.]"[9] AR 29. The ALJ cited to 2013 treatment notes from Wesley Johnson, M.D. and a 2013 Fatigue Questionnaire completed by Plaintiff. *Id*. The ALJ also cited to Plaintiff's 2017 hearing testimony to state that Plaintiff can "dress and bathe herself independently, prepare some meals, watch her two-year-old grandchild for several hours a day, attend church, watch television for a few hours a day, and read for about an hour a day . . . ." *Id*.

A plaintiff does not need to be totally incapacitated to be found disabled. *Taylor v. Commissioner of Social Sec. Admin.,* 659 F.3d 1228, 1235 (9th Cir. 2011); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). In fact, a plaintiff can be found disabled even if she is able to perform some activities of daily living. *See Garrison,* 759 F.3d at 1016. Because total incapacitation is not required for an ALJ to find a plaintiff disabled, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Id*. For example, the Ninth Circuit has held that "many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen,* 80 F.3d at 1287 n.7. Similarly, the Circuit has explained that a plaintiff should not "be penalized for attempting to lead [a] normal li[fe] in the face of [her] limitations." *Reddick,* 157 F.3d at 722. But an ALJ can, nonetheless, determine that a plaintiff's reported activities of daily living provide a valid reason for an adverse credibility determination. *Burrell v. Colvin*, 775 F.3d 1133, 1137–

---

[9] The ALJ stated that Plaintiff reported her occupation as a "homemaker" to Dr. Estela, but the citation—Exhibit 6F/5—refers to treatment notes written by Evarista C. Nnadi, M.D. But, nonetheless, Plaintiff's occupation is listed as "homemaker." AR 569.

1138 (9th Cir. 2014) (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997) ("To

find the claimant not credible the ALJ must rely either on reasons unrelated to the subjective

testimony (e.g., reputation for dishonesty), on conflicts between [her] testimony and [her] own

conduct, or on internal contradictions in that testimony.")).

Here, the Court is concerned that in making an adverse credibility determination, the ALJ

did not consider the evolution and nuances of Plaintiff's abilities. Put another way, the Court is

concerned that the ALJ appears to have glossed over two important factors: (1) Plaintiff's

activities of daily living have changed since 2013, and (2) Plaintiff qualified the extent to which

she can perform the listed activities of daily living.

First, what Dr. Johnson stated Plaintiff reported to him in 2013, about a year following her

lumbar spinal fusion surgery, is much less restrictive than what she testified to being able to do in

2017.[10] The ALJ emphasized that Plaintiff reported to Dr. Johnson and another medical provider

that she "kept house, cooked, cleaned, and did laundry for four people" and identified as a

"homemaker." This, however, was in 2013. As of 2017, Plaintiff testified that she could dress and

bathe herself; she could prepare meals, including "certain foods that do not take very long[;]" she

sometimes would go shopping; she attended church on Sunday but had difficulty sitting through

the two-hour service; she watched TV for about one-to-two hours; and she read for about an hour.

AR 181–182. But she also testified that she did not do laundry (though she would fold clothes

when her husband removed them from the dryer) and "hardly ever" did housework. *Id.* Further,

Plaintiff testified that she "always look[ed] for something to do like maybe dusting the

furniture[,]" but she did not do this every day as it was dependent on how she felt. AR 183.

Additionally, the ALJ found that Plaintiff watched her two-year-old grandchild for several

hours a day. Plaintiff testified to this but noted that she did this only "sometimes" and for a "few

_____

[10] Additionally, medical providers in 2018 noted that Plaintiff's reports of her pain "extremely" interfered with her ability to perform household chores, yard work, shopping, sleeping, and physical exercise and interfered "quite a bit" with her ability to socialize with friends, engage in recreation and hobbies, have sexual relations, and have an appetite. *See, e.g.,* AR 46. The Court recognizes that the 2018 medical records were not available to the ALJ at the time of his decision. But because they are part of the record, the Court must consider them in its analysis.

hours." AR 183. She explained that she did not prepare food for her grandchild and was only there to "supervise him" and "make sure he d[id]n't stick anything in his mouth." AR 184. Finally, Plaintiff testified that she had been supervising her grandchild for "only a couple months" and that she would no longer be doing so because her daughter had "found another person that can do that." *Id*.

On these facts, the Court does not find that the ALJ gave specific, clear, and convincing reasons for discrediting Plaintiff's symptom testimony based on her activities of daily living. This is because Plaintiff's daily activities, as she described them in her testimony and to her most-recent medical providers, appear consistent with her statements about the impairments caused by her pain. Although there have been changes in her reported limitations from what Dr. Johnson reported in 2013 and what Plaintiff testified to in 2017, these changes are to be expected over a four-year period. Further, Plaintiff's daily activities, as described in her testimony and medical reports, also appear consistent with an inability to secure employment and function in a workplace environment. For example, grocery shopping sometimes, preparing meals, watching TV, reading, attending church on Sunday, and sometimes supervising her grandchild for a few hours do not necessarily translate into being able to work full-time, particularly in light of the conditions necessary for Plaintiff to complete these tasks. *See Saunders v. Astrue*, 433 F. App'x 531, 533 (9th Cir. 2011) ("We have held consistently that, activities such as light household chores, cooking meals, and grocery shopping are activities that do not necessarily translate to the work environment.") (citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) (citing *Vertigan,* 260 F.3d at 1050) (holding that grocery shopping, driving a car, and limited walking for exercise are not inconsistent with disability) (citing *Reddick,* 157 F.3d at 723 n.1) (noting that limited cooking, cleaning, and shopping are not indicative of an ability to engage in sustained work activity)).

To be clear, the Court is not finding that Plaintiff's daily activities are consistent with her statements about pain. Nor is it finding that Plaintiff's daily activities are consistent with Plaintiff's claimed inability to work. Rather, the Court holds that the ALJ's reasons for discrediting Plaintiff's symptom testimony, based on Plaintiff's daily activities, are not

1   convincing. This is so for several reasons: (1) Plaintiff's activities were qualified, (2) the ALJ did

2   not acknowledge these qualifications or explain how Plaintiff's daily activities conflicted with her

3   alleged functional limitations, (3) the ALJ did not find that Plaintiff spent a substantial part of a

4   typical day participating in these activities, and (4) Ninth Circuit precedent is clear that an

5   individual need not be totally incapacitated to be disabled and that light chores, cooking, etc. (of

6   the type that Plaintiff appears to be capable of) do not necessarily translate into being able to

7   work. Accordingly, the Court holds that the ALJ erred in rejecting Plaintiff's pain and symptom

8   testimony based on her activities of daily living.

9           Further, the Court holds that the ALJ's rejection of Plaintiff's pain and symptom

10  testimony was not harmless. An error is not harmless unless the reviewing court "can confidently

11  conclude that no ALJ, when fully crediting the [evidence], could have reached a different

12  disability determination." *Stout*, 454 F.3d at 1056. Because the Court found error in the three

13  reasons (i.e., absence of medical treatment, medication- or drug-seeking behavior, activities of

14  daily living) given by the ALJ for discrediting Plaintiff's pain and symptom testimony, the Court

15  cannot conclude that these errors were harmless. Put another way, the Court is not confident that

16  had the Plaintiff's pain and symptom testimony been credited, no ALJ could have reached a

17  different disability determination.

18          Further, the Court finds that the last reason the ALJ cited in discrediting Plaintiff's pain

19  and symptom testimony—the lack of supporting objective medical evidence—also constitutes

20  non-harmless error. Even though an ALJ "may consider a 'lack of medical evidence' as a factor,

21  it 'cannot form the sole basis for discounting pain testimony.'" *Gama v. Colvin*, 611 F. App'x

22  445, 446 (9th Cir. 2015) *(*quoting *Burch,* 400 F.3d at 681); *see also Reddick,* 157 F.3d at 722

23  (noting that an ALJ cannot reject a claimant's subjective pain or symptom testimony simply

24  because the alleged severity of the pain or symptoms is not supported by objective medical

25  evidence). Because the Court found that the ALJ committed non-harmless errors with the three

26  previously cited reasons, it must hold that this final reason—the lack of supporting objective

27  medical evidence—also constitutes non-harmless error. *Id*. Accordingly, the Court will remand

28  for the ALJ to reassess Plaintiff's pain and symptom testimony.

1    Finally, because of his adverse credibility finding, the ALJ excluded Plaintiff's testimony

2 that (1) she could sit for about 30 minutes before having to change positions, lift her leg, or stand,

3 and (2) she could walk for a maximum of 30 minutes from Plaintiff's residual functional capacity

4 ("RFC"). As a result, the ALJ's RFC may not be supported by substantial evidence in the record.

5 Accordingly, on remand, the ALJ must review and determine whether Plaintiff's RFC must be

6 modified, as well as whether Plaintiff can perform past relevant work as a lock assembler. This is

7 required if the ALJ finds Plaintiff's testimony credible. Finally, the Court will not reach

8 Plaintiff's remaining arguments on appeal because it is remanding. It does, however, advise the

9 ALJ to develop the record where there are, as noted in this Order, conflicting and ambiguous

10 findings.

11 **III.    CONCLUSION**

12    Accordingly, IT IS ORDERED that Plaintiff's motion to remand (ECF No. 15) is

13 GRANTED for further proceedings in accordance with this Order. This case is remanded for

14 further proceedings regarding the ALJ's consideration of Plaintiff's pain and symptom testimony

15 and, if necessary, Plaintiff's residual functional capacity and her ability to perform past relevant

16 work as a lock assembler. Specifically, the ALJ must review and determine whether Plaintiff's

17 RFC requires modification should he find Plaintiff's testimony credible

18    IT IS FURTHER ORDERED that the Commissioner's countermotion to affirm and cross-

19 motion for summary judgment (ECF Nos. 16, 17) are DENIED.

20    IT IS ORDERED that the Clerk of Court must enter judgment in favor of Plaintiff Rosa I.

21 Mendez and against Defendant Commissioner of Social Security.

22

23    DATED: July 23, 2020

24    BRENDA WEKSLER
25    UNITED STATES MAGISTRATE JUDGE

26

27

28